IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| James A. Stahl, #273706,<br><br>                     Petitioner,<br><br>vs.<br><br>Jon Ozmint, Director, South Carolina Department of Corrections; and Henry McMaster, Attorney General for South Carolina,<br><br>                     Respondents. | Civil Action No. 3:05-1731-SB-JRM<br><br><br><br><br><br><br>**REPORT AND RECOMMENDATION** |

Petitioner, James A. Stahl ("Stahl"), is an inmate at the South Carolina Department of Corrections serving a sentence of life imprisonment without parole for murder. He filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 1, 2005.[1] The case was automatically referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 (B)(2)(c), DSC. Respondents filed a motion for summary judgment, supported by copies of portions of the state court record, on December 3, 2005. Because petitioner is proceeding pro se, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued on January 4, 2006, advising petitioner of his responsibility to properly respond to the motion for summary judgment. Petitioner filed his response on February 24, 2006.

### Procedural History

Stahl suspected his wife of infidelity. His suspicions were confirmed by domestic wiretapping. They argued on September 8, 2000. Stahl stabbed her with a butcher knife, beat

---

[1] This is the Houston v. Lack, 487 U.S. 266 (1988) "delivery" date. See order filed July 8, 2005.

her with a hammer and decapitated her. He was arrested and gave a taped confession. Stahl was found guilty in Jasper County on March 19, 2001. He did not file a direct appeal.

Stahl filed an application for post-conviction relief ("PCR") on March 11, 2002. An evidentiary hearing was held on February 4, 2003. Stahl appeared and testified at the hearing. He was represented by counsel. The PCR court issued a written order on September 2, 2003 denying Stahl's application with the exception that he had not waived his right to direct appeal.

Stahl then filed a petition for writ of certiorari in the South Carolina Supreme Court raising the following claims:

> I.  Was counsel ineffective for failing to request a curative instruction in this prosecution for homicide, when the prosecutor unfairly argued in summation that the defendant should have produced evidence of his defense of provocation in the form of intercepted phone calls, which were inadmissible by law?
>
> II. Did the post-conviction court properly grant the applicant a belated appeal under *White v. State*?

The court denied certiorari as to Stahl's first issue, but allowed him to raise direct appeal issues. Thereafter, Stahl filed a brief raising the following issue:

> I.  Did the trial court correctly exercise its discretion in denying the Appellant's motion for a change of venue where the court conducted a thorough voir dire of the potential jurors as to their ability to render an impartial verdict despite exposer [sic] to pretrial publicity?

The Supreme Court rejected the direct appeal issue concerning venue and affirmed the conviction pursuant to SCAR 220(b)(1), Stahl v. State, Mem.Op.No. 2005-MO-28 (S.C.Sup.Ct. filed June 6, 2005).

**Grounds for Relief**

In his present petition, Stahl argues that he is entitled to a writ of habeas corpus on the following grounds:

> Ground One: The trial court abused its discretion and denied Petitioner his right to a trial before a fair and impartial jury when the trial court refused to change venue given the extraordinary circumstances of Petitioner being tried for the gruesome slaying in a small town?
>
> Ground Two: Trial counsel was ineffective and Petitioner was prejudiced through trial counsel's failure to request a curative instruction from the court in this prosecution for murder, when the solicitor unfairly argued in summation that Petitioner should have produced evidence form [sic] his defense of provocation in the form of intercepted telephone calls, which were inadmissible by law?

**Discussion**

Since Stahl filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this

3

court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

1. Change of Venue

In his belated appeal, Stahl asserted that the trial court had abused its discretion in failing to grant his motion for a change of venue. He offers the same ground in his present petition. The briefs of the parties before the South Carolina Supreme Court are based primarily on the standard for abuse of process as it relates to denial of the motion to change venue although several United States Supreme Court cases are cited.[2] The cases cited by the South Carolina

---

[2] Stahl cited Rideau v. Louisiana, 373 U.S. 723 (1963) mentioning denial of due process.

Supreme Court in its memorandum opinion are all South Carolina abuse of discretion cases dealing with venue.[3] Respondents do not assert that this claim is unexhausted.

The record shows that Stahl's trial took place within months of the murder. When the trial judge asked the standard voir dire question concerning the jurors' knowledge of the case from pre-trial publicity, practically the entire venire stood. After a bench conference, the court questioned each potential juror who had risen, disqualified some and found others qualified. Stahl's attorney moved to change venue, but the motion was denied. (App. 59).

A criminal defendant is entitled to a fair trial by a jury of his peers. This guarantee includes the right to a "panel of impartial, 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722 (1961). Frequently, potential jurors are exposed to pretrial information from the news media about the alleged crime. However, such exposure does not create a presumption that a defendant's right to due process will be denied. Murphy v. Florida, 411 U.S. 794 (1975). The trial court must determine through voir dire whether pretrial publicity has resulted in jurors with such fixed opinions that they cannot judge the defendant's case impartially. Mu' Min v. Virginia, 500 U.S. 415 (1991). In this process, jurors are presumed to be impartial, absent clear indication to the contrary. Even a juror's preconceived feeling of defendant's guilt will not, in and of itself, void the presumption of impartiality where the juror can put that notion aside and determine the defendant's guilt or innocense based on the evidence to be presented at trial. Irvin, 366 U.S. at 723. Only in the most extreme cases will prejudice to a defendant's right to a fair trial be presumed from pretrial publicity itself. Dobbert v. Florida, 432 U.S. 282 (1977).

---

[3]Stahl v. Patterson, 324 S.C. 5, 482 S.E.2d 760 (1997); State v. Kelsey, 331 S.C. 50, 502 S.E.2d 634 (1998); and State v. Tucker, 324 S.C. 155, 478 S.E.2d 260 (1996).

The record concerning publicity prior to Stahl's trial is not developed. Trial counsel did not make a motion to change venue until jury selection.[4] Thus, there is nothing in the record to show the type (newspaper, television, radio, etc.), amount (number of stories), or content of the pretrial publicity. This claim is based entirely on the number of jurors who indicated they were aware of the case during voir dire. According to Stahl's brief in the South Carolina Supreme Court, ten of the twelve jurors and the three alternates who were seated had been exposed to pretrial publicity. However, all of these jurors affirmed that they could put the information aside and be fair to Stahl.[5] See Hale v. Gibson, 227 F.3d 1298, 1333-34 (10th Cir. 2000), cert. denied, 533 U.S. 957 (2000) (presumption of impartiality not overcome despite 30 newspaper articles about case to which six empaneled jurors were exposed.).

Stahl has not overcome the presumption of juror impartiality and shown that he was denied a fair trial and due process.

2.     Ineffective Assistance of Counsel

As noted above, Stahl made tapes of telephone conversations between his wife and her paramour. The tapes were not offered into evidence, but testimony of witnesses called by the State established the relationship. During summation, the Solicitor commented on the failure of the defense to introduce the tapes. Stahl's counsel did not object to the argument. Stahl argues this failure was constitutionally deficient and deprived him of a fair trial.

---

[4] Stahl did not raise an ineffective assistance of counsel claim on this issue in his PCR.

[5] Stahl's attorney did not object to the voir dire procedure or questions asked by the court.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the <u>Strickland</u> test. See <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

This claim was asserted in the PCR and specifically addressed in the PCR court's order of dismissal. The PCR court found that the failure to object to the comment was not error, nor was Stahl prejudiced by the omission. (App. 367).

The PCR court's error analysis under the <u>Strickland</u> test is confusing at best. The court centered its discussion on counsel's strategic decision not to introduce the tapes into evidence and play them for the jury as they humanized the victim. However during the PCR, counsel testified that, "I did not object [to the Solicitor's argument] and that was not a trial strategy." (App. 304). He further testified, "I did not anticipate and I probably should have objected to [the Solicitor's] referring to it and the lack of it." (App. 305).

The undersigned concludes that it was error for trial counsel not to object to the Solicitor's argument as the tapes were inadmissible, see 18 U.S.C. § 2515. However, the undersigned concludes that the PCR court's analysis of prejudice was not a misapplication of the <u>Strickland</u> standard. Given the overwhelming evidence of guilt, including the lengthy taped confession, Stahl has not shown that the outcome of the trial would have been different had an objection been raised and a curative instruction given to the jury.

## Conclusion

After reviewing the record, it is recommended that respondents' motion for summary judgment be granted, and the petition dismissed without an evidentiary hearing.

                                                Respectfully submitted,

                                                s/Joseph R. McCrorey
                                                United States Magistrate Judge

March 15, 2006
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

# Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
# &
# The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, <u>but</u> <u>not</u> <u>thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509 (6th Cir. 1991). See also <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In <u>Howard</u>, <u>supra</u>, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

<u>See</u> <u>also</u> <u>Branch v. Martin</u>, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark</u>, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See <u>Wright</u>, supra,; and <u>Small v. Secretary of HHS</u>, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201