UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| James A. Stahl #273706, ) | |
| ) | |
| Petitioner, ) | |
| ) | Civil Action No. 3:05-1731-SB |
| v. ) | |
| ) | **ORDER** |
| Jon Ozmint, Director, South Carolina ) | |
| Department of Corrections; and Henry ) | |
| McMaster, Attorney General for South ) | |
| Carolina, ) | |
| Respondents. ) | |

This matter is before the Court upon Petitioner James A. Stahl's ("Stahl" or "the Petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The record contains a report and recommendation ("R&R") of a United States Magistrate Judge, which was made in accordance with 28 U.S.C. § 636(b)(1). In the R&R, the Magistrate Judge recommends that the Court grant the Respondents' motion for summary judgment and dismiss Stahl's petition without an evidentiary hearing. Stahl filed timely objections to the R&R as well as a motion for an evidentiary hearing. See 28 U.S.C. § 636(b)(1) (providing that a party may object, in writing, to an R&R within ten days after being served with a copy of that report).

## BACKGROUND

The Petitioner suspected his wife, Jeannette Kuhn Stahl, of infidelity, and his suspicions were confirmed by domestic wiretapping. On September 8, 2000, while the Petitioner and his wife were arguing, the Petitioner stabbed his wife with a butcher knife, beat her with a hammer, and decapitated her. He was arrested and gave a taped confession. The Petitioner retained attorney David S. Matthews to represent him at trial,

which began on March 19, 2001. The jury convicted the Petitioner as charged, and he is currently serving a sentence of life without parole at the Lieber Correctional Institution of the South Carolina Department of Corrections.

Following his conviction, the Petitioner did not file a direct appeal but instead filed an application for post conviction relief ("PCR"), wherein he alleged that his counsel was ineffective for allowing him to appear before the jury while involuntarily medicated and for failing to file an appeal. The Petitioner also alleged that the solicitor engaged in prosecutorial misconduct by banging a hammer on a courtroom table during trial and by commenting on the Petitioner's failure to produce tapes supporting the Petitioner's defense that his wife was having an affair when such tapes were in fact inadmissible. The Petitioner, who was represented by counsel, appeared and testified at a hearing on February 4, 2003. On September 2, 2003, the PCR court issued a written order denying the Petitioner's application with the exception of the Petitioner's claim that counsel was ineffective for failing to file an appeal; the Court granted the Petitioner a belated appeal.

Subsequently, the Petitioner, through counsel, filed a petition for a writ of certiorari, raising the following claims:

I. Was counsel ineffective for failing to request a curative instruction in this prosecution for homicide, when the prosecutor unfairly argued in summation that the defendant should have produced evidence of his defense of provocation in the form of intercepted phone calls, which were inadmissible by law?
II. Did the post-conviction court properly grant the applicant a belated appeal under *White v. State*?

The South Carolina Supreme Court denied certiorari as to the Petitioner's first issue but allowed him to raise direct appeal issues. Thereafter, the Petitioner filed a brief raising the following issues:

2

I.  Did the trial court correctly exercise its discretion in denying the Appellant's motion for a change of venue where the court conducted a thorough voir dire of the potential jurors as to their ability to render an impartial verdict despite exposer [sic] to pretrial publicity?

The South Carolina Supreme Court denied the direct appeal issue concerning venue and affirmed the conviction. See Stahl v. State, Mem. Op. No. 2005-MO-28 (S.C. S. Ct. June 6, 2005).

On June 15, 2005, the Petitioner filed the present § 2254 petition asserting the following grounds:

> Ground One: The trial court abused its discretion and denied Petitioner his right to a trial before a fair and impartial jury when the trial court refused to change venue given the extraordinary circumstances of Petitioner being tried for the gruesome slaying in a small town.
>
> Ground Two: Trial counsel was ineffective and Petitioner was prejudiced through trial counsel's failure to request a curative instruction from the court in this prosecution for murder, when the solicitor unfairly argued in summation that Petitioner should have produced evidence from [sic] his defense of provocation in the form of intercepted telephone calls, which were inadmissible by law.

On October 18, 2005, the Petitioner filed a document titled, "Amendment to Petition for Writ of Habeas Corpus," wherein the Petitioner adds that "he is entitled to relief because the decision of the State PCR court was based on an unreasonable determination of the facts in light of the evidence presented in that proceeding."

## STANDARD OF REVIEW

### I.  Legal Standard for Summary Judgment

To grant a motion for summary judgment, the Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The court is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. See Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## II.    The Magistrate Judge's R&R

This Court is charged with conducting a de novo review of any portion of the R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636 (b)(1). Any written objection must specifically identify the portions of the R&R to which objections are made and the basis for those objections. Id. After a review of the entire record, including the R&R and the Petitioner's objections, the Court finds that the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the Court adopts the R&R.

## DISCUSSION

### I.    Habeas Corpus Relief

With respect to those claims adjudicated on the merits, habeas relief is warranted only if the Petitioner can demonstrate that the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court explained that § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. Id. at 404-05. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in controlling cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. Id. at 405-06. A federal habeas court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. Id. at 407-08. Factual determinations made by the state "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II.    The Magistrate Judge's R&R

In the R&R, the Magistrate Judge concluded that the Respondents were entitled to summary judgment on both of the Petitioner's claims. First, with respect to the Petitioner's claim that the trial court abused its discretion in failing to grant his motion for a change of venue, the Magistrate Judge determined that the Petitioner had not overcome the presumption of juror impartiality and shown that he was denied a fair trial and due process. Second, with respect to the Petitioner's ineffective assistance of counsel claim, the Magistrate Judge determined that although it was error for trial counsel not to object to the solicitor's argument, the Petitioner could not demonstrate prejudice and thereby fulfill the second prong of the Strickland test. The Magistrate Judge stated, "[g]iven the overwhelming evidence of guilt, including the lengthy taped confession, Stahl has not shown that the outcome of the trial would have been different had an objection been raised

5

and a curative instruction given to the jury." (R&R at 8.)

## II. The Petitioner's Objections

### A. Change of Venue

The Petitioner first objects to the Magistrate Judge's conclusion that the Petitioner did not overcome the presumption of juror impartiality and show that he was denied a fair trial and due process. The Petitioner asserts that the adverse pre-trial publicity in this matter created such a presumption of prejudice in the community that the juror's claims that they could be impartial should not be believed. The Petitioner also refers to the Magistrate Judge's statement that "[t]he record concerning publicity prior to Stahl's trial is not developed" and requests that the Court hold an evidentiary hearing on the matter pursuant to Smith v. Phillips, 455 U.S. 209 (1982), to allow him to prove actual juror bias.[1]

Jurors are presumed to be impartial, and only in the most extreme circumstances may prejudice to a defendant's right to a fair trial be presumed from the existence of pretrial publicity itself. As the Supreme Court stated in Irvin v. Dowd:

> The right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. . . .
>
> It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. That is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on

---

[1] In addition to requesting a hearing in his written objections, the Petitioner also filed a separate "request for hearing," to which the Respondents filed a response in opposition.

the evidence presented in the court.

366 U.S. 717, 722 (1961) (citations omitted). "At the same time, the juror's assurances that he is equal to this task cannot be dispositive of the accused's rights, and it remains open to the defendant to demonstrate 'the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.'" Murphy v. Florida, 421 U.S. 794, 800 (1975). Thus, "[i]t is the defendant's responsibility to demonstrate a strong possibility of jury bias . . . . [I]t is not sufficient to simply allege adverse publicity without a showing that jurors were biased thereby." Wells v. Murray, 831 F.2d 468, 472 (4th Cir. 1987) (internal quotations and citation omitted).

A review of the voir dire transcript in this case indicates that the majority of the jury pool had at least some knowledge of the Petitioner's case,[2] whether through pretrial publicity or from discussing the case with others. Because of this, the trial judge asked each potential juror who admitted having any knowledge of the case to stand up one at a time so that he could inquire as to each juror's knowledge. Of the approximately 53 jurors individually questioned by the judge, only 12 stated that they had already formed an opinion as to the Petitioner's guilt, and the judge excused them. The remaining potential jurors assured the judge that they could give both sides a fair trial and render a verdict based on the evidence put forth at trial.

In his § 2254 petition, the Petitioner argues that the adverse pretrial publicity created such a presumption of prejudice in the community that the juror's claims that they could be

---

[2] The Petitioner states in his response in opposition to the Respondents' motion for summary judgment that 53 of the 69 prospective jurors stood up when asked whether they had knowledge of the case, whether from pretrial publicity or from discussing it with others.

impartial should not be believed. Indeed, as the Supreme Court stated in Murphy, "[i]n a community where most veniremen will admit to a disqualifying prejudice, the reliability of the others' protestations may be drawn into question; for it is then more probable that they are part of a community deeply hostile to the accused, and more likely that they may unwittingly have been influenced by it." 421 U.S. at 803. For instance, in Irvin, the Court readily found actual prejudice against the accused to a degree that rendered a fair trial impossible where 90% of the prospective jurors examined on their partiality were inclined to believe in the accused's guilt and 8 of the 12 jurors thought the accused was guilty. 366 U.S. 717; see also Murphy, 421 U.S. at 803 (noting the same). In contrast, in Murphy, a case in which the Supreme Court found that the petitioner failed to show that the setting of his trial was inherently prejudicial or that the jury-selection process permitted an inference of actual prejudice, only 20 of the 78 veniremen questioned were excused because they indicated an opinion as to the accused's guilt. The Court stated, "[t]his may indeed be 20 more than would occur in the trial of a totally obscure person, but it by no means suggests a community with sentiment so poisoned against petitioner as to impeach the indifference of jurors who displayed no animus of their own." Id.

Here, like Murphy, the Court finds that the fact that roughly 23% of those questioned on the point were inclined to believe in the Petitioner's guilt does not draw into question the reliability of the others' assurances or suggest a community deeply hostile to the accused. Moreover, although the articles submitted by the Petitioner along with his response to the Respondents' motion for summary judgment do concern the Petitioner, their content does not reflect a trial atmosphere "corrupted by press coverage" or a "courthouse given over to accommodate the public appetite for carnival." See id. at 798-99. Instead, the articles

appear to have been primarily factual in nature and thus less prejudicial than editorials or cartoons, and in fact, they arguably support the Petitioner's defense, not of innocence, but of heat of passion. In sum, the Court finds that the Petitioner has failed to show that he was denied his right to a fair trial under the circumstances presented in this case.[3] The Petitioner's claim that the trial court abused its discretion and denied him his right to a fair trial when it denied his motion to transfer venue is denied.

### B.    Ineffective Assistance of Counsel

The Petitioner next objects to the Magistrate Judge's conclusion that the Petitioner cannot demonstrate any resulting prejudice from counsel's failure to object to certain statements made by the solicitor during closing argument. Specifically, as previously set forth, the Petitioner suspected that his wife was having an affair, and to confirm his suspicions, he made audio tapes of telephone conversations between her and her paramour. These tapes were not admissible in evidence; however, during closing argument, the solicitor commented on the Petitioner's failure to introduce the tapes into evidence.[4] The Petitioner's attorney did not object to the solicitor's statements, and the

---

[3] In addition, the Court rejects the Petitioner's argument that he is entitled to a hearing on this issue. The Petitioner was heard on this issue below during his PCR hearing, and the Court finds no error in the Supreme Court's rejection of the Petitioner's claim that the trial judge abused his discretion in denying the Petitioner's motion to transfer venue.



[4] The solicitor stated:

Now, let's get down to the crux of this case. What's important? There has been a lot of talk about the fact that Jeanette was having an affair. Do you know where that came from? Do you know the only place that came from? Think about it. A two hour and some odd minute statement that he gave and ya'll [sic] will have this in the room with you. That is the only place that came from.

9

Petitioner asserts that his attorney was ineffective for failing to object.

First, a meritorious ineffective assistance claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-98 (1984). The first part of the test, a court's evaluation of counsel's performance, must be "highly deferential" under this standard, so as not to "second-guess" the performance. Id. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks and citation omitted); see also Fields v. Attorney General of Maryland, 956 F.2d 1290, 1297-99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1476 (4th Cir. 1985). To establish prejudice and thereby fulfill the second prong of the ineffective assistance test, the challenging defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694-95.

The Court agrees with the Magistrate Judge that the PCR court's analysis of the first prong of Strickland "is confusing at best." Namely, the PCR court focused on counsel's strategic decision not to introduce the tapes into evidence; however, during the PCR hearing, counsel testified that his failure to object to the solicitor's closing argument was



(Trial Transcript at 222.) The solicitor then stated: "Dr. Morgan says that if I heard from one of those tapes, but Dr. Morgan didn't play it for you. If it was there why didn't Dr. Morgan play it for you?" (Trial transcript at 221.)

*not* a trial strategy and he probably should have objected. The trial tapes were inadmissible under 18 U.S.C. § 2515, and the Court therefore agrees with the Magistrate Judge that it was error for counsel not to object to the solicitor's statements.

Next, the Court also agrees with the Magistrate Judge's conclusion that the PCR court's analysis of the prejudice prong was not a misapplication of Strickland. The Petitioner objects that the PCR court never considered the prejudice test; however, the Court finds this objection incorrect. The PCR court clearly considered prejudice and determined that given the overwhelming evidence of guilt, including the Petitioner's lengthy taped confession, there is no reasonable likelihood that the outcome of the trial would have been different had an objection been raised and a curative instruction been given.[5] The Petitioner's claim of ineffective assistance of counsel is denied.

---

[5] Moreover, the Court finds that the only relevance of the tapes was to support the Petitioner's defense of heat of passion, and although the tapes were not offered into evidence, the contents of the tapes were before the jury through the Petitioner's confession; two police officers and a doctor verified the existence of the tapes in their testimony; and the Petitioner received the benefit of the tapes in the form of a voluntary manslaughter charge. Thus, the Petitioner is unable to establish that he was prejudiced by the solicitor's questioning why the tapes were not introduced into evidence.

11

## CONCLUSION

Based on the foregoing, it is

**ORDERED** that the R&R is adopted, the Respondents' motion for summary judgment (Doc. #13) is granted, and the Petitioner's motion for an evidentiary hearing (Doc. #22) is denied.

**IT IS SO ORDERED.**

The Honorable Sol Blatt, Jr.
Senior United States District Judge

October 5, 2007
Charleston, South Carolina